97   557
a195s   86

Henry Jurgens et al. v. T. N. Jamieson, Receiver.

1.  BUILDING AND LOAN ASSOCIATIONS—*Usurious Loans.*—A loan by a building and loan association, made without the money being offered at a public meeting of the directors of the association to the highest bidder, where more than the legal rate of interest is taken, is usurious.

2.  SAME—*How the Imputation of Usury is to be Avoided.*—Under the act of 1885, if a building and loan association would avoid the imputation of usury and the forfeiture of all interest consequent thereupon, whenever it has as much as one hundred dollars in the treasury, it must either offer, at a regular meeting of its board of directors, the same to be loaned to the stockholder who will pay the greatest premium therefor, or it must fix by a by-law, a uniform rate of premium at which its stockholders may borrow its money in the order in which their applications are filed, and without distinction between them.

Mortgage Foreclosure.—Error to the Circuit Court of Cook County; the Hon. EDWARD F. DUNNE, Judge, presiding.   Heard in this court at the October term, 1900.   Reversed.   Opinion filed October 24, 1901.

Statement by the Court.—Defendant in error as receiver of the Northwestern Building Association, filed his bill June 9, 1897, which was subsequently amended June 7, 1898, against the plaintiffs in error, Henry Jurgens and Louisa Jurgens, and others, to foreclose a mortgage to said association made by the said Jurgens to said association,

conveying certain real estate in Chicago, to secure the bond of Henry Jurgens in the penal sum of $12,000, to secure a loan to him by the association of $6,000, made April 19, 1887, the payments to be made in monthly installments of $36 each, on the third Tuesday of each and every month succeeding the date of the bond, with interest at eight per cent per annum, also payable in monthly installments of $40 each on the third Tuesday of each and every month succeeding the date of the bond, the said installments of principal and interest to be paid promptly as they became due until the principal sum of $6,000 should be fully paid, or until each share of stock in the 19th series thereof issued by said association should have attained the value of $100; also to pay in addition the further sum of $2,000, less the first installment thereof of $285.50, as a premium, in monthly installments of $23.81 each, commencing on the third Tuesday of April, 1888, and payable on the third Tuesday in each and every month thereafter; also providing that the association, on default for six months, might declare the whole debt due, and foreclose.

Said building association became insolvent August 1, 1895, and defendant in error was appointed receiver September 12th following. Default was made by Henry Jurgens in the payment of an installment of interest becoming due on said bond August 20, 1895, and on all subsequent installments of interest thereon, and by reason of such defaults the receiver exercised his option, pursuant to the terms of said bond and mortgage, to declare the whole debt due and did so declare.

Answers were filed admitting the loan and making of the bond and mortgage, substantially as above stated, but denying that Henry Jurgens ever became a member of the association, and that he ever bid or authorized any one to bid as premium for the money loaned to him thirty-three and one-third per cent, and denies that the money loaned to him was offered to the highest bidder at any meeting of the association, and alleges that the contract between him and the association was usurious, and that the indebtedness arose

from the loan of said money made without any bidding therefor in open meetings of the association, and therefore that all payments made thereon for principal, interest or premium, by Henry Jurgens, should be credited upon the principal, and that when so credited the loan was paid in full.

The cause was referred to a master to take proof and report his conclusions thereon, which was done, and the master's report finds, among other things, facts as above stated and alleged in the bill and answer, that Henry Jurgens in the month of April, 1887, made a loan of the association of $6,000, became the owner of sixty shares of the 19th series of its capital stock of the par value of $100 each, but that he never attended a meeting of the association on the 19th of April, 1887, when, it is claimed, he bid as premium for said loan thirty-three and one-third per cent thereof, or at any other time, and did not direct or authorize any one to bid any premium for the said money borrowed; also that before and after this loan, other loans were made by the association at a premium of thirty-three and one-third per cent; that no official action was ever taken fixing the rate of premiums to be paid by borrowers, but it was tacitly understood between the officers and directors of the association, until some time after the Jurgens loan, that the premium should be thirty-three and one-third per cent; that on the great majority of the loans made by the association, from its organization in 1885 to some time in the year 1888, the premiums were thirty-three and one-third per cent, and it does not appear that there was ever any actual competitive bidding for the money, the bids being usually made by the secretary or by a director of the association, as per arrangement with the borrower; that up to April 15, 1895, Henry Jurgens had paid $3,600 on his stock, $3,960 on interest, and $2,000 on premium, making a total of $9,560.04, and that there still remained due the association on November 8, 1899, $5,478.02.

After objections to the master's report had been overruled, the cause was heard on exceptions thereto and the

report confirmed. A decree of sale, in default of payment of the amount found due, was entered, the master made sale of the mortgaged premises, pursuant to the decree, which realized $3,000, leaving a deficiency of $2,972.09 against Henry Jurgens, for which a judgment was awarded the receiver, and the latter was directed to hold the sixty shares of stock of Jurgens as security and apply dividends on the deficiency. To reverse this decree and proceedings thereunder the writ of error herein is prosecuted.

E. F. HERRMANN and E. M. WINSTON, attorneys for plaintiffs in error.

E. M. ASHCRAFT, attorney for defendant in error; R. M. ASHCRAFT, of counsel.

MR. PRESIDING JUSTICE WINDES delivered the opinion of the court.

Numerous contentions are made in the able and exhaustive briefs of counsel of the respective parties, as to why the decree should be reversed and sustained, but we deem it unnecessary to refer in detail to them, inasmuch as in our opinion the recent case of Borrowers and Investors' Building Association v. Eklund, 190 Ill. 257, rendered since the filing of the briefs, makes it unnecessary. In that case it is in substance held that such a contract as the one here under consideration, and set out in the statement, is usurious, for the reason that the loan was made without the money being offered at a public meeting of the directors of the association to the highest bidder. The court, in the case referred to, among other things, say:

"The plan marked out by the statute, of requiring the association to offer its money for sale at a regular stated meeting of its directory for the highest rate of premium which its stockholders were willing to bid therefor, or the other alternative plan authorized by the provisions of said section 8, but not adopted by this association, of fixing a rate of premium by a general by-law applicable to all and uniform in its operation as to all stockholders, are the only two plans to be followed in order to exempt a loan, otherwise usurious, from the operation of the general interest

laws of the State. * * * The privilege to contract for premiums accorded to these associations is not an unbridled license to exact any rate of premiums the present situation ·or stress of the affairs of each individual borrower may induce him to consent or agree to pay. On the contrary, if they would avoid the imputation of usury and the forfeiture of all interest consequent thereupon, they must, whenever they have as much as $100 in the treasury, either publicly offer the same at a regular meeting of the board of directors, to be loaned to the stockholder who will pay the greater premium therefor, or they must fix by a by-law a uniform rate of premium at which their stockholders may borrow their money in order as their applications are filed, and without distinction between stockholders."

The statute as to homestead loan associations (Hurd's 1885), in force at the time this loan was made, unlike the statute here under consideration by the court, has no provision permitting a loan association to fix by by-law the rate of premium at which the stockholders may borrow their money, but its only provision in that regard is that the money "shall be offered for loan in open meeting, and the stockholder who shall bid the highest premium for the preference or priority of loan shall be entitled to receive a loan of $100, less the premium bid, for each share of stock held by said stockholder." Under the statute and the finding of the master, which was approved by the court, that the loan was made without the money being offered in open meeting to the highest bidder, the contract between the association and Jurgens is clearly usurious. It follows that the association forfeits all interest, and that when the payments made ·by Jurgens upon the loan, as set out in the statements, are applied, the indebtedness to the association is fully paid. The decree is therefore reversed.